Teresa L. HANSEN, Plaintiff,

v.

CALIFORNIA DEPARTMENT
OF CORRECTION, et al.,
Defendants.

No. C–94–20722 RPA.

United States District Court,
N.D. California.

Oct. 19, 1994.

As Amended Oct. 25, 1994.

Gregory L. Hartwell, Sharon M. Shiller Hartwell, Hartwell & Hartwell, Sacramento, CA.

McAtee, California Dept. of Corrections, Sacramento, CA.

## TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

AGUILAR, District Judge.

On October 18, 1994, plaintiff Teresa Hansen applied to this court for a temporary restraining order. She seeks to prevent the California Department of Corrections ("CDC") from having a staff member observe her as she submitted to an agreed-upon drug test by providing a urine sample. In contrast to the declarations contained in the moving papers, plaintiff has represented to the court that she gave notice to defendants of this motion for temporary restraining order. The court took this matter under submission without hearing oral argument from counsel or receiving and reviewing any opposition papers.

### FACTUAL BACKGROUND

Plaintiff is employed by CDC. She voluntarily submitted to one year of random drug testing after she admitted to one episode of marijuana use during her eight-year employment with CDC.

To date, defendants have ordered plaintiff to be tested five times: February 9, 1994, April 5, 1994, May 26, 1994, July 12, 1994, and August 19, 1994. All testing to date has been negative.

In conducting the drug testing, the CDC maintains a blanket policy of having a female staff member observe the person providing the urine sample during urination. According to the CDC, observation ensures the reliability of the sample. During her first test, plaintiff was accompanied in the bathroom by a female staff member. Although

both plaintiff and the staff member were in a bathroom, the door of the bathroom had an open metal grate. The grate permitted people in the vicinity to see inside the bathroom area. After plaintiff urinated, the specimen was taken out of the room in a see-through evidence bag. Plaintiff believes that co-workers may have seen the urine sample as the test administrator exited the bathroom.

After the first test, plaintiff requested more privacy. In response to this request, CDC covered the grate in the door. Plaintiff was also permitted to wear a hospital gown, which can be lifted while she urinates. The sample is then carried from the testing area in a closed briefcase.

Plaintiff exhausted her administrative remedies prior to filing this action in federal court.

## ANALYSIS

■ Before the court addresses the question of the appropriateness of CDC viewing the plaintiff while she provides a urine sample pursuant to a series of agreed-upon drug tests, the court notes that drug testing of correctional department employees is constitutionally authorized in this situation. *American Federation of Government Employees, AFL–CIO v. Roberts,* 9 F.3d 1464 (9th Cir. 1993, Judge Noonan), is a case which discusses the constitutionality of drug testing of employees in correctional institutions. The Court of Appeals held that (1) regular drug testing of correctional officers was constitutional, and (2) reasonable suspicion testing of correctional officers was constitutional. *Id.* To meet the *Roberts* criteria, the institution must show that an employee's "... performance, appearance, behavior, speech or odor ...'" in some way reflects drug use. A guess is not enough to justify reasonable suspicion testing. *Id.* at 1468. Plaintiff, in the case at bar, is being subjected to reasonable suspicion testing because of her admission to an instance of drug usage during her

employment. An admission by the Hansen is an ample showing of the necessity for CDC to require Hansen to undergo a series of random drug tests for a period of one year.

■ In analyzing the plaintiff's request for temporary restraining order, the court must balance plaintiff's reasonable expectation of privacy against the State's interest in gathering an unadulterated urine sample. Collection of urine is a "search" that must meet the reasonableness requirements under the Fourth Amendment. In *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 665, 109 S.Ct. 1384, 1390–91, 103 L.Ed.2d 685 (1989 citing *Skinner v. Railway Labor,* 489 U.S. 602 at 616–618, 109 S.Ct. 1402 at 1412–1414, 103 L.Ed.2d 639), the court reviewed the issue of testing government employees. The court held that urine testing of United States Customs Service personnel was allowable when the employees were up for promotion. The service was also allowed to test employees whose jobs involved the interdiction of illegal drugs. The court noted, however, that such testing was not to include visual observation of the employee urinating.[1]

■ Visual observation of an employee undergoing a urine test is only appropriate when deemed to be necessary in order to ensure the reliability of the sample. *National Treasury Employees Union v. Yeutter,* 918 F.2d 968 (D.C.Cir.1990) holds that when an employee is undergoing drug testing at the request of an employer because of a reasonable suspicion of drug use, observation of urination will not be required in every case. Rather, *Yeutter* referred to the National Institute of Drug Abuse ("NIDA") guidelines noting that observation is unnecessary unless there is specific "... reason to believe that a particular individual may alter or substitute the specimen to be provided." *Id.* at 975–977, citing the NIDA guidelines. *Yeutter* involved a United States Department of Agriculture ("USDA") program of drug testing that mandated direct visual observa-

---

1. *See, also, National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 175 (1987) which is cited in *Skinner, supra* 489 U.S. at 617, 109 S.Ct. at 1413:

    There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom.

tion of the employee providing the urine sample in every case. The justification for this, advanced by the USDA, was that "... any employee undergoing reasonable suspicion testing 'may alter or substitute the specimen to be provided.'" *Id.* at 975 citing USDA, Drug–Free Workplace Program § 13–1(B). According to the *Yeutter* court, this observation requirement itself must be measured against the Fourth Amendment's reasonableness test. *Yeutter* held that "... no weighty government interest in observation ... counterbalances its intrusion on employee privacy ..." therefore the observation violated the Fourth Amendment search provision. *Id.*

■ In addition to the above reasoning, the *Yeutter* court emphasized that visual monitoring does not necessarily improve the testing accuracy. The court indicates that the NIDA guidelines offer the employer many ways to improve testing accuracy without resorting to visual observation: the toilet water may be colored; and personal belongings and outer garments that could conceal substances to be added to the sample may be removed.

The recent case of *Piroglu v. Coleman*, 25 F.3d 1098 (D.C.Cir.1994) supports the above reasoning. *Piroglu* involves an emergency medical technician ("EMT") that was subjected to mandatory drug testing. The employee was later terminated due to a positive result on a drug test. The employee in *Piroglu* was instructed to urinate into a specimen jar. Piroglu was asked to urinate in the presence of a staff member. The staff member, though in the room, did not actually watch the urination. After plaintiff offered a sample to the staff member, the staff member noted that it was cold. The staff member then requested plaintiff to provide a second specimen, this time in full view of two staff members. During this second urination, plaintiff was watched continuously. The specimen tested positive for cocaine. In analyzing whether the first "observed" urination was reasonable under the Fourth Amendment's reasonableness test, the court applied the *Yeutter* balancing test. The *Piroglu* court balanced the "... District's interest in observation with the resulting intrusion on

Piroglu's interest in privacy." (*Id.* at 1101, citing *Yeutter, supra*, at 975. In applying this test, the *Piroglu* court held that the observation of an employee urinating without reasonable suspicion that the employee would tamper with the sample was unreasonable under the Fourth Amendment. The appellate court therefore remanded the case back to the trial court for a determination as to whether the first urination was watched without a reasonable suspicion that the employee would tamper with her sample. If the trial court determines that: (1) there was no reasonable suspicion that plaintiff would tamper with her sample during the first urination; and (2) that the first urination was actually observed by the staff member; then that aspect of the test would be in violation of the Fourth Amendment.

In the case at bar, the CDC, by its own regulations expresses a belief that visual observation of an employee giving a urine sample should not be conducted in every case. By express terms of the State Bargaining Unit 6 Memorandum of Understanding, § 9.14c(4), defendant CDC committed to the position that "... procedures for collection of the sample should be done in a professional manner and with due regard to the employee's privacy and confidentiality, consistent with the State's need to ensure a true sample is taken."

The CDC further committed to considering the Mandatory Guidelines for Federal Workplace Drug Testing Programs, 53 Fed.Reg. at 11,981 ("NIDA guidelines") in establishing its drug testing procedures. The NIDA guidelines provide that an "... individual may provide his/her specimen in the privacy of a stall or otherwise partitioned area that allows for individual privacy ..." Direct observation of an individual providing a urine sample may only occur based on "... a reason to believe that the individual may alter or substitute the specimen to be provided ..."

In the final decision issued by the CDC Third Level Response to Grievance dated May 11, 1994, the CDC sets forth its justification for the observation of Ms. Hansen: "... generally speaking if the employee's continued employment is contingent on the test results, the possibility of a tainted sam-

ple should be considered." (Exhibit B) CDC's statement would apply to every person who agreed to drug testing. No specific reason to suspect that this plaintiff may tamper with her urine sample was set forth by defendants. Indeed, CDC admits that they make no "... specific judgment as to the possibility of tampering by this employee." (Exhibit B).

## CONCLUSION

Based on the above, the court finds that defendants do not have a specific reason to fear that plaintiff will tamper with her urine sample. The court, therefore, finds that in this instance any visual observation of the plaintiff would be a violation of the reasonableness requirements of a search under the Fourth Amendment to the United States Constitution and a violation of the guidelines adopted by the CDC. As articulated above, the court finds that, there are other far less intrusive means by which the CDC can ensure the reliableness of the urine test as suggested in *Yeutter.*

For the court to allow the State to continue testing, in the manner in which it is now testing, would cause the plaintiff irreparable harm. The plaintiff would be subjected to an unconscionable intrusion upon her privacy. This is so because there are other, less intrusive means to perform the test. Such alternate means to perform the test are set forth above.

The court will conduct a hearing for preliminary injunction on November 18, 1994 at 10:00 a.m. as per stipulation of the parties. There is no harm to the State in waiting for further testing until the hearing on preliminary injunction. Further, the State has the option of conducting the test in a less intrusive manner without visually observing the plaintiff.

For these reasons, the court grants the request for temporary restraining order.

Defendants CDC, James Govez, Don Hill, D.B. Vasquez, Captain E.V. Russell, and Sergeant Robert I. Kim are hereby restrained and enjoined from ordering plaintiff to submit to visual observation of her while urinating to provide a specimen for agreed-upon drug testing.

Security pursuant to Federal Rule of Civil Procedure 65(c) is set in the amount of $0.00. No bond need be posted.

DEFENDANTS AND EACH OF THEM ARE HEREBY ORDERED TO SHOW CAUSE at 10:00 a.m. on October 28, 1994 or as soon thereafter as counsel may be heard in courtroom one (1) before Judge Robert P. Aguilar, located at 280 South First Street, San Jose, California, why you, your officers, agents, servants, employees and attorneys should not be restrained and enjoined pending trial of this action from ordering plaintiff to submit to visual observation of her while urinating to provide a specimen for an agreed-upon drug testing.

This order to show cause and supporting papers must be served on defendants no later than October 20, 1994, and proof of service shall be filed no later than October 21, 1994. Any opposition to this order to show cause must be filed and personally served on plaintiff's counsel no later than October 25th 1994.